# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CARL E. DUNCAN,

     Plaintiff

v.

RAMON OLIVAS, et. al.

     Defendants

Case No.: 3:17-cv-00460-RCJ-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 55

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 55, 55-1 to 55-8, 57-1 to 57-5, errata to declarations at ECF Nos. 60-1 to 60-4.) Plaintiff filed a response. (ECF No. 61.) Defendants filed a reply. (ECF No. 62.) Plaintiff filed a response to the reply. (ECF No. 63.) Local Rule 7-2 contemplates the filing of a motion, response, and reply brief. Sur-replies (a response to a reply brief) are not permitted without leave of court, and are discouraged. LR 7-2(b). Plaintiff filed a response, and then a sur-reply without leave of court. Defendants did not object or move to strike the sur-reply. On this occasion only, the court exercised its discretion to review the sur-reply.

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

# I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Defendants are Ramon Olivas, Kristy Fonoimoana, Jessica Mosley, Kelly Belanger (named by Plaintiff as Bellinger), Tara Carpenter, and Travis Bennett. Defendants Serjio Chan and Jason Owens were dismissed without prejudice under Federal Rule of Civil Procedure 4(m). (ECF No. 36.)

On screening, Plaintiff was allowed to proceed with the following claims: (1) an Eighth Amendment failure to protect claim in Count I against Olivas, Fonoimoana and Mosley, based on allegations that Olivas and Fonoimoana were stationed in the chow hall for security, and Mosely was in the guard tower overlooking the chow hall, and all had a clear view of an assault on Plaintiff and the weapon in the hands of the assaulting inmate, yet they made no effort to stop the assault; (2) an Eighth Amendment delay of medical care claim in Count I against Olivas, Fonoimoana, and Mosely, based on allegations that Olivas ordered Plaintiff to be handcuffed and sent to segregation, and possibly to the janitor's closet, rather than allowing him to get treatment for his wounded and bleeding face and arms; and he was locked in the janitor's closet for 17 hours without treatment, and he subsequently had to be transported to the hospital and get stitches; (3) a due process claim in Count III against Belanger, Carpenter, and Bennett, based on allegations that he was held in administrative segregation for 114 days without a due process hearing, and was not permitted to use a wheelchair that he was permitted to use in general population; (4) retaliation claims in Count III: (a) against Bennett and Olivas based on allegations that they disposed of Plaintiff's grievances against them rather than submitting them

to the grievance coordinator, and (b) against Bennett based on allegations that subsequent to filing grievances, Bennett placed Plaintiff's hot meals outside of his cell to get them cold, and then ran his ungloved hand through Plaintiff's food and spit on it before giving it to Plaintiff. (ECF No. 3.)

Defendants move for summary judgment, arguing: (1) Plaintiff failed to properly exhaust his administrative remedies before filing this lawsuit; (2) Plaintiff's failure to protect claim fails because prison officials had no prior notice of threats to Plaintiff's safety; (3) Plaintiff's deliberate indifference to serious medical needs claim fails because Plaintiff received immediate medical treatment after the assault, and there is no evidence he was placed in a broom closet or denied treatment; (3) Plaintiff was never prescribed a wheelchair; therefore, the conditions he faced in administrative segregation do not give rise to a protected liberty interest; (4) defendants Bennett and Olivas did not dispose of Plaintiff's grievances rather than submitting them to the grievance coordinator as the evidence shoes his grievances made it into the system and were signed by his caseworker and grievance responders; (5) defendants Fonoimoana, Mosely, and Olivas did not personally participate in the alleged constitutional violations as they were not assigned to the culinary that day; and (6) Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

1   of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

2   judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

3   other hand, where reasonable minds could differ on the material facts at issue, summary

4   judgment is not appropriate. *Anderson*, 477 U.S. at 250.

5         "The purpose of summary judgment is to avoid unnecessary trials when there is no

6   dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

7   F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

8   of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

9   U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

10  one party must prevail as a matter of law"). In considering a motion for summary judgment, all

11  reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

12  *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

13  *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

14  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

15  477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

16  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

17  *Anderson*, 477 U.S. at 249.

18        In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

19  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

20  come forward with evidence which would entitle it to a directed verdict if the evidence went

21  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

22  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

23  *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

**A. Exhaustion**

### 1. Standard

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

1  administrative remedies irrespective of the forms of relief sought and offered through

2  administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

3         The failure to exhaust administrative remedies is "'an affirmative defense the defendant

4  must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v.*

5  *Bock*, 549 U.S. 199, 204, 216 (2007). Unless the failure to exhaust is clear from the face of the

6  complaint, the defense must be raised in a motion for summary judgment. *See id.* (*overruling in*

7  *part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust

8  should be raised in an "unenumerated Rule 12(b) motion").

9         "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure

10  to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are

11  disputed, summary judgment should be denied, and the district judge rather than a jury should

12  determine the facts [in a preliminary proceeding]." *Id.*, 1168, 1170-71 (citations omitted).

13         Once a defendant shows that the plaintiff did not exhaust available administrative

14  remedies, the burden shifts to the plaintiff  "to come forward with evidence showing that there is

15  something in his particular case that made the existing and generally available administrative

16  remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d

17  767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate

18  plaintiff did not meet his burden when he failed to identify any actions prison staff took that

19  impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to

20  comply with the administrative remedies process)). The ultimate burden of proof, however,

21  remains with the defendant. *Id*.

22         The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely

23  or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

**2. NDOC's Grievance Process**

Exhaustion of administrative remedies in NDOC is governed by Administrative Regulation (AR) 740, which contains NDOC's inmate grievance procedure. Inmates within NDOC are required to first try to informally resolve their issue, and then must file an informal, first, and second level grievance. If a response is overdue, the inmate may proceed to the next grievance level. (ECF No. 55-5.)

A grievance must be filed within six months if the issue involves personal property damage or loss, personal injury, medical claims or any other tort claims, including civil rights

claims. (AR 740.05.4.A, ECF No. 55-5 at 6.) If the issue involves any other issue, including classification, disciplinary, mail and correspondence, religious items and food, it shall be filed within ten days. (AR 740.05.5, ECF No. 55-5 at 6.) The time frames are waived, however, for allegations of sexual abuse. (AR 740.05.4.D, ECF No. 55-5 at 6.) If an inmate disagrees with the response, he has five days to proceed to the next grievance level. (AR 740.05.12.A, ECF No. 55-5 at 8; AR 740.05.4.A, ECF No. 55-5 at 9.)

AR 740 also contains an emergency grievance procedure, which provides that such grievances are to be immediately delivered to the shift supervisor, and then the shift supervisor may confer with others to determine whether the grievance constitutes an emergency. (AR 740.10, ECF No. 55-5 at 12.) In the event an inmate requests further review of a claim not deemed an emergency, the inmate may file a grievance appeal commencing at the informal level. (*Id*. at 13.)

### 3. Plaintiff's Grievances

Defendants argue that Plaintiff filed three grievances partially addressing the allegations contained in the complaint—20063016803 (ECF No. 55-6), 20063017293 (ECF No. 55-7), and 20063017291 (ECF No. 55-8)—but never completed the grievance process for any of those grievances. In his response, Plaintiff claims that he exhausted administrative remedies through another grievance, 20063040609 (ECF No. 61 at 27-28), and his emergency grievance (ECF No. 61 at 21).

### a. Grievance 20063016803

Plaintiff submitted a grievance stating: it violates the Eighth Amendment when prison officials ignore an obvious and serious danger and fail to segregate an inmate who displayed a violent pattern of behavior; on October 18, 2015, he was a victim of assault and battery when an

1   inmate used a pen with a razor blade attached with saran wrap and came up behind him and

2   sliced his face numerous times; the inmate had a history of aggressive and violent behavior; he

3   was charged with fighting, after he was the victim; Carpenter put him in administrative

4   segregation for 114 days as a form of punishment. He included a classification results notice

5   dated November 19, 2015, stating that Plaintiff was to remain in administrative segregation

6   pending transfer for appropriate housing. He included another classification results notice form

7   from January 19, 2016, that again said he would remain in administrative segregation pending

8   transfer. (ECF No. 55-6 at 7-9, 15, 17.) The informal level grievance is stamped received at LCC

9   on February 9, 2016. (*Id.* at 7.)

10         There is an improper grievance memorandum from Carpenter for grievance 20063016803

11  dated February 9, 2016, stating that the grievance contained more than one incident, issue, etc.,

12  which is improper under AR 740.09.2. He was advised to resubmit the grievance. (ECF No. 55-6

13  at 6.)

14         Plaintiff resubmitted an informal level grievance on February 16, 2016, stating that prison

15  officials violate the Eighth Amendment when they act with deliberate indifference by exposing a

16  prisoner to an unreasonable risk of harm. He asserted that they did so when they ignored an

17  obvious danger and failed to segregate an inmate who displayed a violent pattern of behavior. On

18  October 18, 2015, he was a victim of assault and battery when he was attacked by an inmate with

19  a pen with a razor blade attached with saran wrap who sliced his face numerous times. This

20  inmate had a history of aggressive and violent behavior, and was previously placed in

21  disciplinary segregation for possession of a prison-made knife, and while in disciplinary

22  segregation he threatened inmates and prison staff. (ECF No. 55-6 at 3; ECF No. 55-6 at 27-29.)

23  It is signed by the grievance coordinator on February 17, 2016, and the caseworker on

1  February 26, 2016, and approved by the grievance coordinator on March 2, 2016. (*Id.*)

2        K. Belanger was assigned to respond at the informal level, and responded on

3  March 1, 2016, that during the due process hearing Plaintiff told Belanger that he knew the

4  inmate who cut him when he was housed in the south and did not have any problem with him,

5  and any issues he had surfaced after he arrived at LCC. He was told he was placed in

6  administrative segregation for his safety, was no longer housed at LCC, and would not receive

7  compensation for the incident. She cited AR 507.01(1)B which states that inmates will be

8  temporarily placed in administrative segregation to protect the safety of the inmate, other

9  persons, the institution or community or to conduct investigations into violent misconduct or

10 misconduct which threatens escape or a significant disruption of institutional operations. She

11 also cited AR 503.06 and stated it does not create any liberty interest or right to any classification

12 status, employment or placement. (ECF No. 55-6 at 2.) There is a memorandum from LCC to

13 Warm Springs Correctional Center  (WSCC) dated March 9, 2016, enclosing the grievance and

14 directing that it be forwarded to WSCC as Plaintiff was housed there, to sign and indicate his

15 agreement/disagreement, and then the response was to be returned to LCC. (ECF No. 55-6 at 4.)

16 Plaintiff signed the informal grievance indicating his disagreement with the response on

17 March 21, 2016. (ECF No. 55-6 at 3.)

18        Plaintiff apparently did not proceed further with this grievance.

19                **b. Grievance 20063017293**

20        Plaintiff submitted an informal level grievance for grievance 20063017293 on

21 February 16, 2016, stating that prison officials are negligent when they fail to exercise

22 reasonable or ordinary care to protect a prisoner from assault or to do anything when it happens.

23 He went on to state that they failed to place video surveillance in the chow hall where many

1  violent incidents have occurred and there is known danger.  (ECF No. 55-7 at 5-6.) The informal

2  level grievance is signed by the grievance coordinator on February 17, 2016, and the caseworker

3  on March 21, 2016. (*Id.* at 5.)

4      There is an improper grievance memorandum from Carpenter dated February 17, 2016,

5  stating that under AR 740.05.7, if the inmate's remedy to the grievance includes monetary

6  restitution or damages, the inmate will get the form DOC 3095, the Administrative Claim Form,

7  and complete and submit it in addition to the grievance for personal injury, tort or civil rights

8  claims. (ECF No. 55-7 at 2.) There is a memorandum to WSCC's grievance coordinator dated

9  March 9, 2016, forwarding grievance 20063017293 indicating that Plaintiff was housed at

10  WSCC. It was requested that he needed to sign the improper grievance memorandum which

11  needed to be returned to LCC. (*Id.* at 3.) The improper grievance memorandum was signed as

12  received by Plaintiff on March 11, 2016. (*Id.* at 2.)

13      Plaintiff apparently did not proceed any further with this grievance.

14          **c. Grievance 20063017291**

15      Plaintiff submitted an informal level grievance for grievance 20063017291 on February

16  16, 2016, stating that on October 18, 2015, he was charged with fighting after he had been the

17  victim of assault and battery when an inmate attacked him with a pen with a razor blade attached.

18  He started fighting the inmate off as best he could but blood kept getting in his eyes while the

19  correctional officers stood by watching it happen. He was found not guilty of charges of fighting

20  on November 17, 2015. He spoke to Carpenter, who said he would not get out of segregation

21  until he gave them information about a situation of which he had no knowledge. He spoke to

22  Belanger about being released from administrative segregation, and she said it was up to

23

11

Carpenter. He asserted that Carpenter was abusing the process and he was unlawfully confined in segregation. (ECF No. 55-8 at 5-8.)  This is signed by the grievance coordinator on February 17, 2016, and by the caseworker on March 21, 2016. (*Id.* at 5.)

There is an improper grievance memorandum for grievance 20063017291 from Carpenter dated February 17, 2016, stating that under AR 740.05.4, an inmate must file an informal grievance within ten days if the issue involves other issues including classification, disciplinary, mail and correspondence, religious items, and food. (ECF No. 55-8 at 2.) There is a memorandum to WSCC's grievance coordinator forwarding grievance 20063017291 as Plaintiff was housed at WSCC, and requesting that Plaintiff sign the improper grievance memorandum and that it be returned to LCC. (*Id.* at 3.) Plaintiff signed the improper grievance memorandum on March 21, 2016. (*Id.* at 2.)

### d. Grievance 20063040609

Plaintiff filed informal level grievance 20063040609 on December 27, 2016, stating that on October 19, 2015, he was placed in administrative segregation and was held for 114 days without a due process hearing. He asserts that during the time he was held, he was denied access to the grievance process by Bennett, who refused to provide him with a grievance, and removed his grievances from his cell door as the grievances never made it to the grievance coordinator. (ECF No. 61 at 27-28.) It is signed by the grievance coordinator on January 3, 2017. (*Id.* at 27.)

There is an improper grievance memorandum from Carpenter dated April 11, 2017, for grievance 20063040609, stating that the grievance contained more than one appropriate issue and only one issue is allowed per grievance. (ECF No. 61 at 26.) Plaintiff signed the form on April 28, 2017. (*Id.*)

Plaintiff resubmitted informal level grievance 20063040609 on May 1, 2017, stating that in October of 2015, while housed in administrative segregation he was denied access to the grievance process because of Bennett who refused to provide a grievance to Plaintiff upon request or within a reasonable time of the request. When he did receive a grievance from another officer, he placed it on his cell door to be collected by Bennett who collected the grievance but never submitted it to be processed to the grievance coordinator.  (ECF No. 61 at 24-25.)

There is an  improper grievance memorandum from Carpenter dated June 15, 2017, for grievance 20063040609, stating that it was an untimely submission because under AR 740.05.4.A, a claim involving personal property damage or loss, personal injury, medical claims or other tort claims, including civil rights claims must be filed within one month. (ECF No. 61 at 23.) Plaintiff signed this form on July 27, 2017. (*Id.*)

### e. Emergency Grievance

Plaintiff filed an emergency grievance on January 16, 2016, stating that multiple times he witnessed food being served after it had been sitting outside for 20 minutes or longer, and then watched Bennett dancing and playing around while the food sat for 20 minutes. He reported that he was tired of eating cold food, and when the food is served the officers would put their hands in it or whistle over the food while spit would come out of their mouths. The response states that the issue was addressed with staff. (ECF No. 61 at 21.)

### 4. Analysis

Plaintiff does not dispute that he failed to exhaust his administrative remedies through grievances: 20063016803 (ECF No. 55-6), 20063017293 (ECF No. 55-7), and 20063017291 (ECF No. 55-8), and the record reveals he did not proceed through all three levels of the

grievance process for these grievances; therefore, they did not serve to exhaust his administrative remedies.

Instead, Plaintiff argues: (1) that he did not file grievances because he felt threatened with retaliation by Bennett and Olivas; and (2) he did exhaust his remedies through grievance 20063040609 because he was told it was untimely and he could not go any further in the grievance process.

Defendants assert that Plaintiff offers no evidence or proof that he was afraid he would be retaliated against if he continued his grievance process. In his sur-reply, Plaintiff submits the same evidence as he did in response to the motion concerning exhaustion.

The court will now address whether Plaintiff exhausted administrative remedies with respect to each of his claims, or whether administrative remedies were unavailable.

In *Ross v. Blake*, the Supreme Court noted 3 instances where administrative procedures were unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (i.e., handbook directs inmates to submit grievances to particular administrative office but in practice it disclaims the capacity to consider those petitions); (2) "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Such as "[w]hen rules are 'so confusing that ... no reasonable prisoner can use them,' then 'they're no longer available.'"; (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake,* 136 S.Ct. 1850, 1859-1860 (2016).

14

1        In *Andres v. Marshall*, the Ninth Circuit characterized this as a "non-exhaustive list."

2   *Andres v. Marshall*, 867, F.3d 1076, 1078 (9th Cir. 2017), *as amended* August 7, 2017. *Andres*

3   held that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner

4   is deemed to have exhausted available administrative remedies" because "prison officials have

5   'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process

6   unavailable." *Id*. at 1079 (quoting *Ross*, 136 S.Ct. at 1859; *Brown v. Valoff*, 422 F.3d 926, 943 n.

7   18 (9th Cir. 2005); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016);

8   *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004); *Jernigan v. Stuchell*, 304 F.3d

9   1030, 1032 (10th Cir. 2002); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).

10        The Ninth Circuit has also held that fear of retaliation may also make the grievance

11   process unavailable. *McBride v. Lopez*, 807 F.3d 982 (9th Cir. 2015). "[T]he threat of retaliation

12   for reporting an incident can render the prison grievance process effectively unavailable and

13   thereby excuse a prisoner's failure to exhaust administrative remedies." *Id*. at 987.

14        This requires a subjective and objective showing. *Id*. "To show that a threat rendered the

15   prison grievance system unavailable, a prisoner must provide a basis for the court to find that he

16   actually believed prison officials would retaliate against him if he filed a grievance." *Id*. at 987.

17   "If the prisoner makes this showing, he must then demonstrate that his belief was objectively

18   reasonable." *Id*. "That is, there must be some basis in the record for the district court to conclude

19   that a reasonable prisoner of ordinary firmness would have believed that the prison official's

20   action communicated a threat not to use the prison's grievance procedure and that the threatened

21   retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id*.

22        The Ninth Circuit stated that "the threat need not explicitly reference the grievance

23   system in order to deter a reasonable inmate from filing a grievance ... [but], there must be some

15

basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison's grievance system." *McBride*, 807 F.3d at 988. "Only then will the threat render the prison grievance system effectively unavailable." *Id*.

### a. Eighth Amendment Failure to Protect and Medical Care Claims

Under AR 740, Plaintiff had six months to file grievances concerning the Eighth Amendment failure to protect and medical care claims.

The Eighth Amendment violations allegedly occurred on October 18, 2015; therefore, Plaintiff had until mid-April of 2016 to file informal level grievances raising these issues. Plaintiff claims that he could not file grievances because Olivas and Bennett took his grievances in October 2015 and December 2015 and failed to process them. The evidence reflects, however, that Plaintiff was able to file grievances, and those grievances were processed, beginning in February of 2016, when he was still at LCC. In fact, he filed three grievances in February of 2016 raising issues about the October 18, 2015 incident. He signed each of the improper grievance memoranda these grievances while at WSCC indicating he received them; however, he did not complete the administrative process for any of them by resubmitting a proper grievance, or moving on to the first and second levels. Moreover, none of these grievances raised the issue that he was denied medical care.

Plaintiff has not demonstrated that he could not file a grievance within the time limits of AR 740 for these claims and has provided no evidence as to why he did not complete the grievance process for the grievances filed in February of 2016; therefore, the court finds that administrative remedies were available to Plaintiff with respect to the Eighth Amendment failure to protect and denial of medical care claims, and Plaintiff failed to exhaust his administrative

1  remedies. Since the time has long since expired for Plaintiff to grieve these issues, summary

2  judgment should be granted in favor of Defendants Olivas, Fonoimoana and Mosley as to these

3  claims.

4                    **b. Retaliation**

5       Plaintiff has two retaliation claims: (1) alleging that Bennett and Olivas disposed of

6  grievances rather than submit them to the grievance coordinator, and  (2) alleging that after he

7  attempted to file grievances against them, Bennet placed hot meals outside Plaintiff's cell to

8  make them cold, ran his hands through Plaintiff's food, and spit on them.

9                 **i. Disposal of Grievances - Bennett and Olivas**

10       Plaintiff asserts in his complaint that while housed in administrative segregation, when he

11  first requested a grievance form from Bennett, he was denied the forms all together, and had to

12  wait for the next shift to acquire the forms. Then, he filed an informal level grievance on

13  October 21, 2016, and placed it on his cell door for collection since he was locked in and did not

14  have access to the grievance box himself. He avers that on that day, Bennett and Olivas came to

15  remove Plaintiff from his cell for a disciplinary hearing, and Bennett removed his grievance from

16  the cell door and began reading it. After 45 days, he did not receive a response to his grievance

17  that asserted that Olivas had threatened him, so he sent a kite to the grievance coordinator about

18  the status of his grievance, and the grievance coordinator responded that they never received a

19  grievance. He alleges that Bennett never sent the grievance to the grievance coordinator for

20  processing. Plaintiff alleges that he re-submitted another informal level grievance in December

21  2015, and it was again removed from the door by Bennett, who read the grievance, and after 45

22  days, Plaintiff did not receive a response. Again, he sent a kite asking why there was no

23  response, and the grievance responder responded stating we never received a copy or the original

17

grievance. Therefore, he alleges that Bennett never gave the grievance to the grievance

coordinator for processing. Plaintiff states that he came to believe there was no use in filing his

grievance when the same two officers were taking his grievances and not processing them.

Plaintiff also would have had six months (until mid-April 2016 regarding the disposal of

the October 21, 2015 grievance, and until June 2016 for the December 2015 grievance) to grieve

the alleged retaliatory action of Olivas and Bennett. Plaintiff did file three grievances in February

of 2016, that were processed by prison staff, but he did not complete the grievance process for

any of these grievances.

Plaintiff filed grievance 20063040609 on December 27, 2016, more than a year after he

alleges Bennett and Olivas did not process his grievances in October and December of 2015.

This was well outside the time frame to file such a grievance, and the fact that he was able to file

other grievances in February of 2016 establishes that administrative remedies were available to

him during the time period he had to file a grievance on this claim.

Aside from the timeliness issue, Plaintiff is incorrect that the improper grievance

memorandum deeming grievance 20063040609 to be untimely served to exhaust his

administrative remedies. As was outlined above, an inmate must complete three levels to exhaust

administrative remedies: informal, first and second levels. If Plaintiff disagreed with the response

to the grievance at the informal level, he had five days to appeal to the next level. (AR

740.05.12.A, ECF No. 55-5 at 8.) Plaintiff did not do so. Therefore, grievance 20063040609 did

not otherwise serve to exhaust his administrative remedies.

Plaintiff presents no other evidence as to why he could not file a timely grievance raising

these issues once he was able to file grievances again. Therefore, the court finds that

administrative remedies were available to Plaintiff, and he failed to exhaust his administrative

remedies with respect to the retaliation claim against Bennett and Olivas regarding the processing of his grievances in October and December of 2015. Since the time has long since passed to raise these issues, summary judgment should be granted in favor of Bennett and Olivas as to these claims.

### ii. Food- Bennett

Again, Plaintiff alleges that after he tried to submit grievances against Bennett, Plaintiff claims that Bennett placed his meals outside his cell to get cold before serving them, put his hands in Plaintiff's food, and spit in Plaintiff's food.

On January 16, 2016, Plaintiff filed an emergency grievance raising this issue. (ECF No. 61 at 21.) Defendants do not address this emergency grievance.

AR 740.10 states that when an emergency grievance is received, the shift supervisor may confer with others to determine whether the grievance constitutes an emergency. (ECF No. 55-5 at 12.) It then says that "[i]n the event the inmate requests further review of a claim not deemed an emergency, the inmate may file a grievance appeal commencing at the Informal Level." (*Id.* at 13.)

There is nothing that specifically addresses the interplay between the informal, first and second level grievances, and an emergency grievance, but the implication in AR 740.10 is that if an emergency grievance is deemed to not be an emergency, then the inmate may file a grievance appeal commencing at the informal level. The AR does not state that an inmate who files an emergency grievance that is answered (*i.e.* has not been found to not be an emergency) must continue on through the normal grievance levels.

Here, the response to Plaintiff's emergency grievance did not state that it was deemed to not be an emergency. Instead, the response states that the issue was addressed with staff and the

grievance was addressed. Plaintiff signed the grievance as agreeing with the response that same day. (ECF No. 61 at 21.) Defendants provide no authority or argument that Plaintiff had to do anything further to exhaust his administrative remedies with respect to his claim that Bennett retaliated against him when he let his food get cold, ran his hands through the food, and spit in the food when his emergency grievance was addressed. Therefore, Defendants have not met their burden of establishing Plaintiff failed to exhaust his administrative remedies with respect to this claim, and their motion should be denied in this regard. The court will address the merits of this claim below.

### c. Due Process

Plaintiff alleges that he was taken to Pershing County Medical Center following the October 18, 2015 incident, and on October 19, 2015,  he was placed in administrative segregation pending an investigation of the incident. On October 21, 2015, he was served with a notice of charges for fighting. He was found not guilty of the charges. Plaintiff states that he was left in administrative segregation for 114 days without a due process hearing. He sent kites to Belanger and Carpenter but they did not respond. He asserts that his due process rights were violated because he did not receive a due process hearing after 30 days, or every thirty days after that.

Plaintiff could raise a new due process claim every time he asserts he was denied his right to an administrative segregation hearing/review (i.e., every 30 days). He states that he was placed in administrative segregation after he returned from his stay in the hospital following the October 18, 2015 incident.

If he was in administrative segregation for 114 days, he would have gotten out of administrative segregation around February 10, 2016. It is unclear if he got out of administrative

segregation at that time, or not until he was transferred to WSCC on February 25, 2016. In any event, he appears to claim he should have received a due process hearing/review before the initial placement on October 19, 2015, and then every thirty days thereafter: around November 19, 2015, December 19, 2015, and on January 19, 2016.

Under AR 740, classification issues must be grieved within 10 days. Therefore, he would have had until around October 29, 2015 to grieve the initial failure to give him a hearing; until around November 29, 2015, to grieve the lack of a hearing/review at 30 days; until around December 29, 2015, to grieve the lack of a hearing/review at the 60 day point; and until around January 29, 2016, to grieve the lack of a hearing/review at the 90 day point. He got out of administrative segregation after 114 days.

Plaintiff asserts that when he tried to submit grievances on October 21, 2015, and then in December of 2015, Bennett took his grievances and failed to process them. Then in January of 2016, he filed an emergency grievance regarding Bennett making his food sit out and spitting in his food, which he claims is evidence that Bennett was still threatening him.

Defendants argue that Plaintiff provides no evidence that he was scared he would be retaliated against if he continued the grievance process. They ignore Plaintiff's statements that Bennett twice took his grievance forms and failed to process them in October and December of 2015, which was during the period he was in administrative segregation. Not only does he state this in his verified complaint, but he said it again in grievance 20063040609, filed on December 27, 2016. (ECF No. 61 at 28.) Therefore, he has provided evidence to support his claim. In addition, he submits the January 2016 emergency grievance as evidence that Bennett was still threatening him at that point.

The Ninth Circuit specifically held in *Andres* that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies" because "prison officials have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable." *Id.* at 1079 (quoting *Ross*, 136 S.Ct. at 1859; *Brow v. Valoff*, 422 F.3d 926, 843 n. 18 (9th Cir. 2005); *Robinson v. Superintendent Rockview SCI,* 831 F.3d 148, 153 (3d Cir. 2016); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).

Unlike Plaintiff's other claims, the time to file a grievance regarding the failure to give him a hearing/review of his administrative segregation classification every 30 days had expired under AR 740 by the time the evidence shows he was able to file grievances, around February 9, 2016.

Therefore, the court finds that administrative remedies were unavailable to Plaintiff with respect to grieving the due process claim. Insofar as Defendants move to dismiss this claim because Plaintiff failed to exhaust administrative remedies, the motion should be denied. The court will address the merits of this claim below.

**5. Conclusion**

Plaintiff failed to exhaust his available administrative remedies with respect to the Eighth Amendment failure to protect and medical care claims, as well as the retaliation claim alleging that Bennett and Olivas disposed of his grievances. Plaintiff exhausted his administrative remedies for the retaliation claim based on the allegation that Bennett placed hot meals outside his cell to get cold and spit in his meals. Administrative remedies were unavailable to Plaintiff with respect to the due process claim that he was placed in administrative segregation without a

hearing/review every thirty days. Therefore, the court will now address the merits of the retaliation claim related to his meals against Bennett, and the due process claim against Belanger, Carpenter, and Bennett.

**B. Due Process**

Plaintiff was allowed to proceed with a due process claim against Belanger, Carpenter, and Bennett, based on allegations that he was held in administrative segregation for 114 days without a due process hearing/review, and was not permitted to use a wheelchair that he was permitted in general population.

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To invoke its protections, an inmate "must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Once the plaintiff has established one of these interests is at stake, the court's analysis turns to whether the inmate suffered a denial of adequate procedural protections. *See Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'[.]" *Wilkinson*, 545 U.S. at 221 (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution); *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id*. (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

Courts have uniformly held that placement in administrative segregation for non-punitive reasons does not give rise to a liberty interest from the Constitution itself. *See Chappell v.*

23

1  *Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468

2  (1983)). As the Supreme Court explained, administrative segregation, which is "used to protect

3  the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially

4  disruptive groups of inmates, or simply to await later classification or transfer," "is the sort of

5  confinement that inmates should reasonably anticipate receiving at some point in their

6  incarceration." *Hewitt*, 459 U.S. at 468.

7      "[A] liberty interest in avoiding particular conditions of confinement *may* arise from state

8  policies or regulations, subject to important limitations set forth in *Sandin v. Connor*, 515 U.S.

9  472 (1995)." *Wilkinson*, 542 U.S. at 222 (emphasis added). To establish a due process claim

10  related to placement in administrative segregation, an inmate must show that the classification

11  resulted in conditions that amount to an "atypical and significant hardship in relation to the

12  ordinary incidents of prison life." *See Chappell*, 706 F.3d at 1064.

13      If an inmate demonstrates a protected liberty interest, in the context of placement in

14  segregated housing for non-punitive reasons, the inmate must be given notice of the reason for

15  the segregation and be provided, within a reasonable time after such placement, with an

16  informal, non-adversary review of the evidence  justifying the decision to segregate the inmate.

17  *See Hewitt*, 459 U.S. at 476. Unlike a disciplinary proceeding, an inmate is not entitled to

18  "detailed written notice of charges, representation of counsel or counsel substitute, an

19  opportunity to present witnesses, or a written decision describing the reasons for placing the

20  prisoner in administrative segregation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir.

21  1986), *abrogated in part on other grounds in Sandin v. Connor*, 515 U.S. 472 (1995). After

22  being placed in segregation, prison officials must periodically review the initial placement. *See*

23

24

1   *Hewitt*, 459 U.S. at 477, n. 9 (noting this does not necessarily require the submission of any

2   additional evidence or statements).

3        On screening, the court noted that the allegations of the general conditions of

4   administrative segregation were not enough to create a protected liberty interest; however, the

5   court allowed him to proceed with his claim to the extent he alleged that while he was confined

6   in administrative segregation he was deprived of a wheelchair. (ECF No. 3 at 11.)

7        Defendants argue that Plaintiff has never been prescribed a wheelchair, referring to

8   Exhibit L at ECF No. 57-4, which are his progress notes that do not contain any information

9   suggesting he was prescribed or used a wheelchair. Defendants further assert that a notice of

10   charges was written against Plaintiff on October 18, 2015. (ECF No. 55-2.)

11        On October 19, 2015, Plaintiff was placed in administrative segregation pending the

12   outcome of the notice of charges after a due process hearing. (ECF No. 55-3 at 4.)

13        On November 19, 2015, Plaintiff's placement in administrative segregation was reviewed

14   pursuant to LCC Operational Procedure (OP) 507.06.2. (ECF No. 55-3 at 4, ECF No. 55-4.)

15   OP 507 provides that administrative segregation is designed for when inmates require closer

16   supervision and separate housing from the general population, and is not for the purpose of

17   punishment. (ECF No. 55-4 at 2.) Inmates are also placed into administrative segregation if there

18   is a lack of bed space in general population or protective segregation. (*Id.* at 3.) OP 507 provides

19   for a review every 30 days. (*Id.* at 4.)

20        Even though the notice of charges was dismissed, the classification committee

21   recommended that Plaintiff remain in administrative segregation pending his transfer to another

22   prison due to his inability to return to the LCC yard because of "keep separate" custody issues.

23   (ECF No. 55-3 at 4.)

25

Plaintiff's placement in administrative segregation was reviewed again on December 21, 2016, January 19, 2016, and February 19, 2016. (ECF No. 55-3 at 4.) At each review, the classification committee recommended that Plaintiff remain in administrative segregation pending his transfer to another prison due to his inability to return to the LCC yard because of "keep separate issues." (*Id.*) On February 25, 2016, he was transferred from LCC to WSCC. (*Id.*)

In his response, Plaintiff argues that the duration and the conditions of confinement were the same as being in disciplinary segregation. (ECF No. 61 at 7.)

Plaintiff does not respond to Defendants' evidence that he was not prescribed a wheelchair. Nor does he set forth any evidence that describes the conditions he contends he faced in administrative segregation that would suggest he was subject to atypical hardship. Therefore, Plaintiff has not created a genuine dispute of material fact as to whether he had a protected liberty interest as a result of his confinement in administrative segregation. Moreover, even if he had a protected liberty interest, he was given all the process he was due. He had an initial due process classification hearing when he was placed in administrative segregation, and his placement was reviewed approximately every 30 days, with a finding that he should remain in administrative segregation because of "keep separate" issues pending transfer. He was eventually transferred on February 25, 2016. He was not entitled to a full hearing every 30 days.

Therefore, summary judgment should be granted in favor of defendants Belanger, Bennett and Carpenter.

## C. Retaliation

Based on the recommendation above, the only remaining retaliation claim is Plaintiff's claim that Bennett placed Plaintiff's hot meals outside of his cell to get them cold, and then

1  Bennett ran his ungloved hand through Plaintiff's food and spit on it before giving it to Plaintiff.

2  Plaintiff alleges that he believes this was because he was filing grievances against Bennett.

3       "Section 1983 provides a cause of action for prison inmates whose constitutionally

4  protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791

5  F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a

6  claim consists of five elements:

7              (1) An assertion that a state actor took some adverse action against
               an inmate (2) because of (3) that prisoner's protected conduct, and
8              that such action (4) chilled the inmate's exercise of his First
               Amendment rights, and (5) the action did not reasonably advance a
9              legitimate correctional goal.

10 *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005))

11      Defendants assert that they deny the allegations; however, they only substantively

12 address the retaliation claim related to the alleged disposal of grievances, asserting that the

13 evidence shows Plaintiff's grievances made it into the system. While Defendants have shown that

14 Plaintiff's grievances made it into the system, those were grievances from February of 2016.

15 They do not address his contention that Bennett collected and then failed to process grievances in

16 October and December of 2015. Moreover, they do not substantively address the claim that

17 Bennett placed Plaintiff's meals outside to get cold, and ran his hands through and spit in

18 Plaintiff's food.

19      In light of Defendants' failure to substantively address this retaliation claim, summary

20 judgment should be denied as to this claim against Bennett.

21 **D. Qualified Immunity**

22      Defendants did not address the remaining retaliation claim in their qualified immunity

23 argument; therefore, Bennett is not entitled to qualified immunity with respect to this claim.

27

1

## IV. RECOMMENDATION

2       IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING**

3 **IN PART AND DENYING IN PART** Defendants' motion for summary judgment

4 (ECF No. 55) as follows: the motion should be **DENIED** as to the retaliation claim against

5 Bennett regarding the food; the motion should be **GRANTED** as to the other claims and

6 defendants for the reasons stated herein.

7       The parties should be aware of the following:

8       1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

9 this Report and Recommendation within fourteen days of being served with a copy of the Report

10 and Recommendation. These objections should be titled "Objections to Magistrate Judge's

11 Report and Recommendation" and should be accompanied by points and authorities for

12 consideration by the district judge.

13       2. That this Report and Recommendation is not an appealable order and that any notice of

14 appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

15 until entry of judgment by the district court.

16

17 Dated: June 8, 2020

18                                             _William G. Cobb_____
                                               William G. Cobb
19                                             United States Magistrate Judge

20

21

22

23